(March 30, 2004)

█ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDRE THOMAS, Appellant. [774 NYS2d 137]—

Judgment, Supreme Court, Bronx County (Robert Straus, J.), rendered December 7, 1998, convicting defendant, after a jury trial, of assault in the second degree, and sentencing him, as a second felony offender, to a prison term of five years, to run consecutively with a previously imposed sentence for an unrelated crime, unanimously affirmed.

Insofar as is relevant to this appeal, defendant and Keith Smith were jointly tried for assault in the second degree, of which defendant was convicted and Smith was acquitted. The two defendants, inmates at Rikers Island, were charged with attacking Christopher Alston, another inmate.

Alston testified at trial that he and defendant had entered into an agreement, pursuant to which defendant would import heroin into the prison and which Alston would purchase by disbursing money from his prisoner account to defendant's girlfriend and then resell to other inmates; codefendant Smith was present during the negotiations. On March 17, 1997, about two weeks after defendant delivered the drugs, he called Alston over to a spot in a common area of the housing unit where defendant and codefendant Smith were sitting together, but apart from the other inmates. Defendant complained that he had not yet received full payment; the argument became heated, and defendant leaped up and punched Alston in the mouth. Smith then immediately lunged forward, punched Alston in the back of the neck, and ran away. Alston continued his fight with defendant, during which Smith returned to land another blow on Alston's back and then retreat again. At one point during the scuffle, Alston felt a "yanking" sensation at his neck.

Alston somehow disengaged himself from the fight and returned to his cell, where another inmate told him that he had been cut. Enraged, Alston returned to the common area, unsuccessfully chased Smith and then resumed fighting with defendant, until a correction officer broke up the fight. The correction officer, who had seen the three men fighting but was uncertain whether defendant or Smith was the protagonist, noticed that Alston was bleeding from the back of the neck, and he was therefore taken to the prison clinic, where he received eight stitches for a 10-centimeter laceration at the back of the neck. Alston also had some cuts to his back, and he discovered that the gold chain he had been wearing around his neck was missing.

Alston believed that Smith had inflicted the 10-centimeter laceration, the only injury upon which a second-degree assault conviction could be based, although he did not actually see who cut him. However, following the incident, Alston wrote a letter to defendant's girlfriend in which he accused defendant of cutting him and threatened revenge.

On appeal, defendant contends that the verdict was against the weight of the evidence, since it was the prosecution's theory that Smith was the one who actually cut Alston and that defendant was acting as Smith's accomplice, yet the jury acquitted Smith and convicted defendant. However, as the trial court properly instructed, the jurors were to consider the charge against each defendant on its own respective merits (*see People v Rivera,* 84 NY2d 766 [1995]). Notwithstanding the People's theory at trial, the jury could have logically concluded that defendant was the one who cut Alston, since Alston did not actually see who cut him, he blamed defendant in the letter to defendant's girlfriend, and the correction officer was not sure who the main combatant was. Another logical conclusion would be that, even if defendant did not personally inflict the wound, he "solicit[ed], request[ed], command[ed], importune[d], or intentionally aid[ed]" another to do so (Penal Law § 20.00), and the evidence was sufficient to show that Smith was the one who cut Alston. In any event, the fact that the jury acquitted Smith does not preclude the imposition of accomplice liability on defendant (*see* Penal Law § 20.05 [2]; *People v Gemmill,* 146 AD2d 951, 952 [1989]; *Matter of Khaliek W.,* 193 AD2d 683, 684 [1993]), and even if the verdicts could somehow be viewed as inconsistent, the court should not intrude upon the deliberative process by speculating that the jury acted irrationally rather than that it decided to exercise mercy (*see People v Rayam,* 94 NY2d 557, 561-563 [2000]). Insofar as defendant asserts that the witnesses were not credible, we find no basis for disturbing the jury's finding on that issue, which should be accorded great deference (*see People v Corporan,* 169 AD2d 643 [1991], *lv denied* 77 NY2d 959 [1991]).

Defendant's arguments that the trial court failed to respond meaningfully to certain jury notes and that his counsel was improperly precluded from commenting on the final jury note are unpreserved and, in any event, without merit. Concur—Buckley, P.J., Ellerin, Williams and Gonzalez, JJ.